**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

v. 1:25-cr-282 (AMN)

ELLIOT CINTRON, a/k/a "BRAX BUGATTI"

Defendant.

---

**APPEARANCES:** **OF COUNSEL:**

**United States Attorney for the Northern District of New York**
445 Broadway
Albany, New York 12207
*Counsel for the Government*

**CYRUS P.W. RIECK, ESQ.**
**KATHERINE E. KOPITA, ESQ.**
**NICHOLAS WALTER, ESQ.**
Assistant United States Attorneys

**Dayan Law LLP**
80-02 Kew Gardens Rd., 9th Fl.
Kew Gardens, New York 11415
*Counsel for Defendant Cintron*

**ALBERT Y. DAYAN, ESQ.**

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On May 26, 2026, a grand jury in the Northern District of New York ("Northern District") returned a one-count superseding indictment against Elliott Cintron ("Defendant"), who was charged along with eight other defendants. Dkt. No. 304. Cintron was charged with participating in a conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846, including cocaine, methamphetamine, and fentanyl in excess of the quantities identified in 21 U.S.C. § 841(b)(1)(A), and heroin in excess of the quantity identified in 21 U.S.C. § 841(b)(1)(C). On June 5, 2026, authorities arrested Defendant in the Eastern District of New York ("Eastern

District") after a vehicle pursuit, which ended when the pickup truck in which Defendant was riding flipped over onto a Queens sidewalk. Dkt. No. 333-1 at 6-7.[1] During the subsequent detention hearing in the Eastern District on June 8, 2026, United States Magistrate Judge Seth D. Eichenholtz ordered Defendant released on certain conditions and a $250,000 unsecured bond. Dkt. No. 333-2 at 43:20-47:15, 65:15-66:3 ("Detention Hearing"). On February 26, 2025, the United States ("Government") filed a motion to revoke the Detention Hearing order in this Court and additionally requested it be stayed pending review, Dkt. No. 315, a request the Court granted, Dkt. No. 319. The Government filed a memorandum in support of their motion, Dkt. No. 333, Defendant opposed, Dkt. No. 374, and the Government replied, Dkt. 375.[2]

For the reasons set forth below, the Government's motion to revoke the Detention Hearing order is granted and Defendant is ordered detained pending trial.

## II. BACKGROUND[3]

Defendant's case emerges from, and is intertwined with, an existing criminal case brought by the Government. On June 11, 2025, the Government indicted twelve defendants for conspiring to distribute millions of dollars worth of controlled substances, including cocaine, methamphetamine, fentanyl, and marijuana. Dkt. No. 333-1 at 3; *see* Dkt. No. 1. As relevant here,

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

[2] Based on the parties' written submissions, "the Court does not find a hearing necessary and decides this bail appeal solely on the papers." *United States v. Henry*, No. 25 Mag. 23, 2025 WL 240902, at *1 n.2 (S.D.N.Y. Jan. 17, 2025) (citations omitted); *see also* 18 U.S.C. § 3142(f). Accordingly, Defendant's motion for a hearing in response to the Government's motion, Dkt. 374, is denied as moot.

[3] The following background facts are taken from the parties' submissions and other records available to the Court. Because this release order only concerns Defendant, the Court principally focuses on the allegations and facts relevant to his detention.

the Government alleges that Samer Abdelhak ("Abdelhak") acted as the leader of this organization, obtaining drugs and arranging for them to be distributed across New York, with the assistance of couriers including Cesar Ariel Castro-Sanchez ("Castro-Sanchez"), Christopher Christman ("Christman"), and Tiffany Waldvogel ("Waldvogel"). *See* Dkt. No. 1 at 3-4 (Abdelhak, Castro-Sanchez, and Christman); Dkt. No. 81 at 1-2 (Waldvogel).[4]

Though Defendant was not named in these initial indictments, law enforcement repeatedly surveilled Defendant receiving boxes from Christman and Waldvogel at his home in Queens and his stash house located a few blocks away. Dkt. No. 333-1 at 10. Accordingly, when authorities executed search warrants at twenty-four premises across New York and New Jersey on June 12, 2025, the day after the initial indictment, both Defendant's home and his stash house were searched. *See id.* at 4-5. In Defendant's home, law enforcement discovered hundreds of pills containing fentanyl, nearly a kilogram of MDMA, and Defendant's passport. *Id.* at 11. The stash house contained more than thirty-two kilograms of cocaine, over ten thousand pills containing fentanyl, dozens of grams of methamphetamine and heroin, scales, cash, a money counter, and a kilogram press. *Id.* The stash house also contained Defendant's tax returns and other mail addressed to him. *Id.*

Defendant was arrested that same day, and his phone was seized and searched pursuant to a warrant. *Id.* at 5. Messages recovered from Defendant's phone include videos from Abdelhak allegedly showing boxes of methamphetamine, Dkt. No. 333-4 at 4, and dozens of kilograms of

---

[4] On January 29, 2026, Abdelhak pleaded guilty to the Government's superseding indictment. *See* Dkt. Nos. 203-04. Between September of 2025 and March of 2026, Castro-Sanchez, Christman, and Waldvogel each pleaded guilty to individual felony superseding informations. Dkt. Nos. 185-86 (Waldvogel); Dkt. Nos. 216-17 (Christman); *United States v. Castro-Sanchez*, No. 1:25-CR-351. Dkt. Nos. 95 & 97 (Castro-Sanchez).

cocaine, Dkt. No. 333-5 at 1. Other messages arranged for the delivery and sale of cocaine, *see* Dkt. No. 333-6 at 3-21, and fentanyl, *id.* at 152-57, and discussed hundreds of thousands of dollars allegedly owed by Defendant for drug sales, *id.* at 372-73, 768-70. The Government contends text exchanges and digital files on other devices seized by authorities provide further evidence of Defendant's involvement in the drug conspiracy. On the day before authorities executed a search warrant at Defendant's stash house, for example, a text on Castro-Sanchez's phone accounting for 225 kilograms of cocaine identified "33 protection already out" with Defendant, which the government contends refers to the thirty-two kilograms stamped "protection" recovered at Defendant's stash house. Dkt. 333-3 at 145; Dkt. 333-1 at 11.

Though Defendant was initially released without charges following his June 12, 2025 arrest, after the grand jury returned the superseding indictment on May 26, 2026 law enforcement attempted to arrest Defendant again. On June 5, 2026, when Defendant was approached by law enforcement to effectuate the arrest, the pickup truck in which he was a passenger fled. Dkt. 333-1 at 6. Law enforcement pursued him in a "high-speed chase" for several blocks, which only ended when the pickup truck flipped onto a Queens sidewalk, injuring Defendant and requiring his removal to the hospital. Dkt. 333-2 at 10:9-15, 25:24-26:9, 61:25. Defendant, through counsel, did not contest that he fled from law enforcement, instead contending that he believed his pursuers were not law enforcement officers and intended to rob him. *Id.* at 12:17-13:8. Defendant averred that there was $50,000 in cash in the pickup truck, and noted that he was wearing a gold chain. *Id.* at 21:12-13. But an FBI Special Agent testified that the lights on their marked car were activated when they approached Defendant's truck, and sirens were activated when Defendant began to flee. *Id.* at 20:12-14. Defendant's counsel did not contest that sirens were activated, instead stating "when the sirens did come up it was so well into the chase that . . . the sirens had no credibility to

[him]." *Id.* at 13:11-14. After the pickup truck crashed, Defendant was arrested, and he subsequently appeared in the Eastern District for the Detention Hearing that is the subject of the Court's review.

## III. STANDARD OF REVIEW

"A district court reviews *de novo* a magistrate judge's order of pretrial release or detention." *United States v. Minnici*, 128 F. App'x 827, 828 n.1 (2d Cir. 2005) (citing, *inter alia*, *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)). The release or detention of a defendant pending trial is governed by 18 U.S.C. § 3142. Generally, a court only orders detention if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

However, 18 U.S.C. § 3142(e)(3) provides a rebuttable presumption that no such conditions exist "where probable cause supports a finding that the person seeking bail committed certain types of offenses[.]" *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011). A drug trafficking offense with a maximum term of imprisonment of ten years or more prescribed in 21 U.S.C. § 841 triggers that presumption. *See* 18 U.S.C. § 3142(e)(3)(A). "Where there is such a presumption, the defendant 'bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight.'" *English*, 629 F.3d at 319 (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). "Once a defendant has met his burden of production . . . the presumption does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *United States v. Mattis*, 963 F.3d 285, 290-91 (2d Cir. 2020) (alterations in original) (quoting *Mercedes*, 254 F.3d at 436).

When seeking pretrial detention, "[t]he government bears the burden of proving risk of flight by a preponderance of the evidence, but it must prove danger to the community by clear and convincing evidence." *United States v. Artis*, 607 F. App'x 95, 96 (2d Cir. 2015) (first citing 18 U.S.C. § 3142(g); and then citing *United States v. Sabhnani*, 493 F.3d 63, 74-75 (2d Cir. 2007)); *see also Mattis*, 963 F.3d at 291 ("Even in a presumption case, the government retains the ultimate burden of persuasion[.]") (quoting *Mercedes*, 254 F.3d at 436). Additionally, "[t]he rules of evidence do not apply in a detention hearing," and "the government may 'proceed by proffer alone.'" *United States v. Rivera-Banchs*, No. 20-2873, 2021 WL 4484908, at *2 (2d Cir. Oct. 1, 2021) (summary order) (first citing 18 U.S.C. § 3142(f); and then quoting *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000)).

In determining whether the Government has satisfied its burden, a court considers the following factors: (1) "the nature and circumstances of the offense charged[;]" (2) "the weight of the evidence against the person[;]" (3) "the history and characteristics of the person[;]" and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4).

## IV. DISCUSSION

The Government argues that Defendant should be detained pending trial because he is a serious flight risk and a danger to the community. *See* Dkt. Nos. 333-1 at 9-20, 375 at 1-2. Given the ten years or more of imprisonment faced by Defendant for the charged offenses, his ownership of real estate in Buffalo, New York and Michigan, his apparent access to significant financial resources as a result of his participation in the alleged drug enterprise, and his failure to disclose prior international travel to Pretrial Services, the Government contends that Defendant has both the motive and means to flee. *See* Dkt. No. 333-1 at 9-10, 17-18, 19-20. The Government further

contends that Defendant's actions during his arrest support their position, as "[t]he minute he saw the guys trying to arrest him . . . he took off." Dkt. 333-2 at 16-17. The Government claims there are "no conditions available to mitigate the danger posed by the defendant," because his alleged involvement in large-scale drug dealing and his purported gang affiliation present too great a danger to the community. Dkt. 333-1 at 16-19. Defendant primarily responds that the release conditions set by Magistrate Judge Eichenholtz were appropriate, and that the Government has not established that he is a flight risk or danger. *See* Dkt. No. 374.

The Court notes the charged offense carries a rebuttable presumption of detention. *See* 18 U.S.C. § 3142(e)(3)(A). While the Government argues that Defendant "cannot rebut the presumption of dangerousness and flight," *see* Dkt. 333-1 at 9, it does so with reference to the four factors that the Court is required to consider in every detention decision, and without contending that Defendant has failed to meet the burden of production required to rebut the initial presumption. Dkt. 333-1 at 9-17; *see* 18 U.S.C. § 3142(e)(3). Accordingly, conducting *de novo* review, the Court "consider[s] each of the factors that would bear on whether the presumption in favor of detention was rebutted," which the Second Circuit has instructed are the same as those in Section 3142(g). *Mattis*, 963 F.3d at 292; *see Mercedes*, 254 F.3d at 436.

**A. Nature and Circumstances of the Offense**

As discussed above, Defendant is charged with participation in a conspiracy to sell millions of dollars' worth of drugs. *See supra* Section II. Defendant is alleged to have personally aided in the distribution of significant quantities of cocaine, methamphetamine, fentanyl, heroin, and MDMA in New York City. Dkt. 333-1 at 9-10. The Government represents that it seized drugs from Defendant's home and stash house, including more than thirty-two kilograms of cocaine and tens of thousands of pills containing fentanyl. Dkt. 333-1 at 11. Further, messages from

Defendant's phone purportedly show he was supplied with up to forty-five kilograms of cocaine and hundreds of pounds of methamphetamine at a time by Abdelhak. *See* Dkt. 333-1 at 11-12. These allegations are further supported by surveillance showing large-scale deliveries to Defendant from admitted drug couriers for Abdelhak. *See id.*; *see also supra* note 4.

This tremendous quantity of potentially lethal drugs that Defendant is charged with having conspired to sell carries the potential for significant criminal penalties "reflect[ing] Congress's appreciation for the severity of these offenses." *United States v. Brown*, 538 F. Supp. 3d 154, 167 (D.D.C. 2021). By statute, Defendant faces at least ten years in prison, and the Government estimates a guidelines imprisonment range that may well exceed two hundred months. Dkt. No. 333-1 at 10. At most, he could serve life. *See* 21 U.S.C. § 841(b)(1)(A). And "[t]he prospect of a severe sentence can create a strong incentive for a defendant to flee and thereby avoid that sentence." *United States v. Zhang*, 55 F.4th 141, 151 (2d Cir. 2022) (citing *Sabhnani*, 493 F.3d at 76). Accordingly, the Court finds that this factor supports detention. 18 U.S.C. § 3142(g)(1).

**B. Weight of the Evidence**

"The presumption of innocence is a trial right, and a district court does not violate that presumption by considering the strength or weakness of the evidence to determine whether pretrial detention is appropriate." *Zhang*, 55 F.4th at 144. The Government describes the evidence against Defendant as "overwhelming," Dkt. No. 333-1 at 10, and supports that contention by reference to physical and digital evidence uncovered by searches, combined with surveillance, Dkt. No. 333-1 at 10-15. As discussed in detail above, the Government represents that they seized sizable quantities of various drugs and drug paraphernalia, intermingled with Defendant's passport and tax returns, at his home and stash house. *See* Dkt. 333-1 at 11. Law enforcement surveillance

observed Defendant meeting with and receiving boxes at those addresses from individuals who have already pleaded guilty to drug distribution as part of the same organization with which Defendant is accused of working. *Id.* at 10; *see supra* note 4. Messages recovered from Defendant's phone pursuant to a search warrant allegedly show Defendant discussing the purchase and distribution of drugs, and associated income streams and debt. *See* Dkt. 333-1 at 12-15. During the Detention Hearing and in his letter motion to this Court, Defendant did not contest the weight of this evidence. *See generally* Dkt. 333-2; Dkt. 374.

Accordingly, the Court finds that the weight of the evidence against Defendant also supports detention. 18 U.S.C. § 3142(g)(2); *see also Zhang*, 55 F.4th at 151 ("Where, as here, the evidence against a defendant is strong, it follows that the defendant faces an elevated risk of conviction (and of the attendant punishment), and therefore may present an elevated risk of flight."); *United States v. Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010) ("Because the evidence of guilt is strong, it provides [defendant] with an incentive to flee.") (citing *United States v. Millan*, 4 F.3d 1038, 1046 (2d Cir. 1993)).

**C. History and Characteristics of Defendant**

Defendant's criminal history, while not trivial, is also not extensive. In his two offenses adjudicated as an adult, for crimes committed in 2010 and 2011 when he was seventeen and eighteen, Defendant pleaded guilty to felony attempted criminal possession of a weapon—a loaded firearm—in the second degree, and was sentenced to and served a period of three years detention and eighteen months post-release supervision. Dkt. 326 at 3-5. The Government highlights Defendant's alleged gang connections, pointing to a tattoo, various social media postings and music videos, and messages recovered from his phone. Dkt. 333-1 at 16-17. But Defendant has had no criminal record in the time between his 2011 arrest and this case. *See* Dkt. 326 at 3-5.

Other aspects of Defendant's history and characteristics are more concerning. The evidence suggests that Defendant has access to significant resources to enable flight. Defendant told Pretrial Services he has been "self-employed off the books, doing maintenance work" since at least 2020, but "at the advice of counsel [Defendant] didn't disclose his income." Dkt. 326 at 2. The Government contends his main business was and is selling drugs, with substantial associated income. *See* Dkt. 333-1 at 17-18. In addition to the drug seizures from the June 2025 searches detailed above, authorities recovered $50,000 in cash and $200,000 in jewelry from his home and stash house. *Id.* at 11. Messages from Defendant to Abdelhak discuss Defendant's sale of tens of thousands of dollars' worth of drugs a week. *Id.* at 13-14.

Despite Defendant's report to Pretrial Services that he now has only $25,000 in a savings account, with no other assets or real estate, *see* Dkt. 326 at 2, the Government contends that "there is little reason to believe the defendant stopped drug trafficking following the searches on June 12, 2025," and he has continued to display access to significant resources. Dkt. 333-1 at 17-18. A social media posting by Defendant on August 21, 2025, depicts him carrying what appears to be a hefty stack of U.S. currency above a caption stating "people fake a lifestyle they can't maintain for broke people.[]Moral of the story don't fake a lifestyle[.]" *See* Dkt. 333-1 at 18. Though Defendant's counsel argues that he was merely faking an "Instagram life," *see* Dkt. 333-2 at 31:21-23, counsel also admits that at the time of his June 2026 arrest Defendant wore a gold chain and was carrying $50,000 in cash in the pickup truck in which he fled from law enforcement, *id.* at 21:12-14. Further, the Government represents that Defendant owns real estate in Michigan and western New York, and is the part owner of "at least four" rental properties—none of which he reported to Pretrial Services. Dkt. 333-1 at 12. The Court concludes that "despite [Defendant]'s

professed modest assets, the record shows his access to substantial resources to finance flight." *United States v. Liebowitz*, 669 F. App'x 603, 605 (2d Cir. 2016).

The Court is also troubled by another instance of apparent lack of candor with Pretrial Services. Defendant told Pretrial Services that he had never traveled outside the United States, Dkt. 326 at 2, but the Government represents that he visited Mexico in 2023 and was in the Dominican Republic in June 2025, Dkt. 333-1 at 17. While Defendant contends that he did not "intentionally withhold any information" regarding his international travel, he subsequently reversed his representations to Pretrial Services and admitted that he traveled to both countries. Dkt. 374 at 3. Defendant is a United States citizen, and his passport has been confiscated. Dkt. 333-2 at 11:13-18. But the Court's concern with respect to Defendant's flight risk is only strengthened by his previous failures to accurately report his movement to authorities.

In sum, Defendant is alleged to have engaged in a multiyear drug conspiracy; has apparently amassed substantial assets as a result; appears to have access to significant additional real and financial assets; and was not candid with authorities about both his domestic real estate holdings and his international travel. The Court thus finds that Defendant's history and characteristics support detention. 18 U.S.C. § 3142(g)(3).

**D. Nature and Seriousness of the Danger Posed by Defendant's Release**

When authorities attempted to apprehend Defendant on June 5, 2026, he and the driver of the pickup truck in which he was riding fled. Dkt. No. 333-1 at 6-7. An FBI Special Agent testified that, though they were in an unmarked car, they activated their lights immediately, and activated their sirens when the pickup truck carrying Defendant pulled away. Dkt. 333-2 at 20:12-14. Defendant, through counsel, admitted to hearing the sirens, but ignoring them. *Id.* at 13:11-14. The chase only ended when the pickup truck in which Defendant rode flipped over onto a Queens

sidewalk. Dkt. No. 333-1 at 7. Defendant does not contest that he engaged in a high-speed chase, and merely argues that he did not realize that he was being detained by law enforcement and feared robbery because its "in the nature of the business that he's alleged to have been [in.]" Dkt. 326 at 21:17-20, 12:17-13:8. This justification is neither convincing nor comforting.

Also unconvincing is Defendant's argument that, during the one-year lapse between the search of his home and stash house and his arrest, he did not flee. Dkt 333-2 at 13-15-14:6. This might have had some persuasive force if the Court examined it in a vacuum to help predict how Defendant would act when approached by law enforcement—though the Government rightly contends that the incentive to flee may be strengthened when a defendant is actually charged, Dkt. 333-1 at 17. But the Court does not examine it in a vacuum. There is no need to guess what might happen when Defendant is approached by law enforcement. It has already happened—and Defendant fled.

For all these reasons, the Government has carried its burden of proving by a preponderance of the evidence that Defendant is a flight risk. The Court agrees with the Government that "[t]he defendant not only has every incentive to flee, but likely has the means to do so." Dkt. No. 333-1 at 18. Further, the Government has carried its burden of proving by clear and convincing evidence that Defendant poses a danger to the community. The Government presents unrebutted evidence of Defendant's large-scale trafficking of potentially lethal drugs. The evidence is sufficient to show danger to the community, regardless of whether Cintron's charges also carry a statutory presumption of dangerousness or merely provide an addition weight in the Section 3142(g) analysis. Considered together with the potentially disastrous chase that occurred when authorities attempted to take Defendant into custody, the Court concludes that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any

other person and the community." 18 U.S.C. § 3142(e)(1). Accordingly, the Court grants the Government's motion to revoke, and orders Defendant detained pending resolution of this action.

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Government's motion to revoke the release order, Dkt. No. 333, is **GRANTED**; and the Court further

**ORDERS** that Defendant is remanded to the custody of the United States Marshal's Service pending resolution of this case; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 25, 2026
Albany, New York

Anne M. Nardacci
Anne M. Nardacci
U.S. District Judge